DENNIS CUNNINGHAM, SBN 112910
W. GORDON KAUPP, SBN 226141
115 ½ Bartlett Street
San Francisco, California 94110
Telephone: (415) 285-8091
Facsimile: (415) 285-8092

Attorneys for Plaintiff
WILLIAM HENRY COUSINS

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| WILLIAM HENRY COUSINS,<br><br>       Plaintiff,<br><br>   v.<br><br>BILL LOCKYER, (former) ATTORNEY GENERAL OF CALIFORNIA, in his individual capacity; RICHARD RIMMER (former) DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR), in his individual capacity; ROSEANNE CAMPBELL (former) WARDEN OF MULE CREEK STATE (in her individual capacity); the CALIFORNIA DEPARTMENT OF JUSTICE (DOJ), the CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR); the STATE OF CALIFORNIA; and JOHN/JANE DOES 1 THOUGH 20.<br><br>       Defendants. | Case No. C-07-01165 SBA<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br><br>DATE:    October 30, 2007<br>TIME:    1:00 P.M.<br>PLACE:  Ctrm 3, 3rd Floor<br><br><br>Hon. Saundra Brown Armstrong |

Plaintiff, through his undersigned counsel, hereby answer and oppose defendants'

Motion.

1

**TABLE OF CONTENTS**

2

3   INTRODUCTION ................................................................................................ 3
    STATEMENT OF FACTS .................................................................................. 3
4       1. Procedural History .................................................................................. 3
5       2. Duties of the Attorney General ............................................................. 5
        I.  LEGAL STANDARD FOR DISMISSAL ...................................................... 8
6       II. THE COMPLAINT SUFFICIENTLY STATES COGNIZABLE LEGAL DUTIES
        OWED BY THE DEFENDANTS TO THE PLAINTIFF AND FACTS SUFFICIENT TO
7       GIVE DEFENDANTS FAIR NOTICE OF PLAINTIFF'S CLAIMS. .................................. 9
            A. The Due Process Violation. ............................................................... 10
8           B. The Eighth Amendment Violation ..................................................... 11
9           C. The common law violation of false imprisonment *cum* prolonged detention.............. 14
        III. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE
10      PLAINTIFF'S RIGHTS WERE CLEARLY ESTABLISHED. ................................................ 14
        IV.  FORMER ATTORNEY GENERAL BILL LOCKYER IS NOT ENTITLED TO
11      IMMUNITY UNDER FEDERAL OR STATE LAW. ........................................................... 19
12          1. Defendant Lockyer, and unnamed Doe defendants, were not acting in their role as
            advocates before a court, therefore they are not entitled to absolute immunity. ............... 19
13          2. There is no causal relationship between the prosecution process and defendant
            Lockyer's role as chief administrator of the laws of the state. ........................................ 20
14      IV. THE BANE ACT DOES NOT REQUIRE DISCRIMINATORY ANIMUS.  FURTHER,
        PLAINTIFF'S COMPLAINT ASSERTS FACTS THAT CONSTITUTE COERCION
15      UNDER THE STATUTE .................................................................................................... 21
        CONCLUSION ................................................................................................................... 22

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1

2

# TABLE OF AUTHORITIES

3

**Cases**

4

*Alexander v. Perrill,* 916 F.2d 1392, 1398 (9th Cir.1990)............................................ 11

*Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987) ................................................ 16

5

*Asgari v. City of Los Angeles*, 15 cal.4th 744, 757 (1997) .......................................... 14

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990) .............................. 8, 9

6

*Blueford v. Prunty*, 108 F.3d 251, 254 (9th Cir. 1997).................................................. 15

7

*Boccato v. City of Hermosa Beach* (1994) 35 Cal.Rptr.2d 282 ................................... 22

*Bradford v. State of California*,36 Cal.App.3d 16, 21 (Dist. 2 1973)....................... 17, 18

8

*Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993) ................................................. 19, 20

*Burns v. Reed*, 500 U.S. 478, 486-487 (1991) ............................................................. 19

9

*Campbell v. Illinois Dept. of Corrections,* 907 F.Supp. 1173, 1179-1180 (N.D.Ill. 1995) ......... 13

10

*Carlo v. City of Chino*, 105 F.3d 493, 501-502 (9th Cir. 1997) ................................... 16

*Citizens Capital Corp. v. Spohn*, 133 Cal.App.3d 887, 889 (1982) ............................ 21

11

*Conley v. Gibson*, 355 U.S. 41, 47, (1957) ................................................................. 8, 9

*Davis v. Hall*, 375 F.3d 703, 716 (8th Cir.2004) ........................................................ 11

12

*Davis v. Holly*, 835 F.2d 1175, 1178 (6th Cir. 1987) .................................................. 16

*Davis v. Scherer*, 438 U.S. 183, 193 (1984) .......................................................... 16, 17

13

*Ellis v. City of Pittsburgh*, 1996 WL 266126 (N.D. Cal. 1996)................................... 9

*Fairley v. Luman*, 281 F.3d 913, 918 fn. 6 (9th Cir. 2002) ......................................... 10

14

*Flippo v. Ingram,* 74 Cal.App.4th *supra* at 1280 ....................................................... 21

15

*Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir.2002) ............ 15

*Garcia v. City of Chicago, Ill.,* 24 F.3d 966, 974 (7th Cir.1994) ................................. 12

16

*Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1285 (11th Cir. 1998) ................... 16, 17

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ............................................. 15, 16, 18

17

*Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) .......................... 10, 11, 12

18

*Hope v. Pelzer*, 536 U.S. 730, 740 (2002) ................................................................... 15

*Hydrick v. Hunter* 2007 WL 2445998, 3 (9th Cir. 2007) ........................................... 15

19

*Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) .......................................................... 19

*In re Player* 146 Cal.App.4th 813, 825-826 (2007 Dist.4) .......................................... 11

20

*In re Sandel* (1966) 64 Cal.2d 412, 418-419 ......................................................... 12, 18

*Ingram v. Flippo*, 74 Cal.App.4th 1280, 1292-1293, (Dist. 6 1999) ......................... 21

21

*Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) ............................................................. 19

22

*Kilgore v. Younger*, 30 Cal.3d 770, 784 (1982)........................................................... 5

*Kwai Fun Wong v. United States,* 373 F.3d 952 (9th Cir.2004) ................................... 

23

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993)......................................................................................................................... 9

24

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)............................................ 13

25

*Leer v. Murphy*, 844 F.2d 628, 633-634 (9th Cir. 1988) ............................................. 9

*Lundblade v. Franzen*, 631 F.Supp. 214 (N.D.Ill.1986)............................................. 13

26

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) ............................................................... 16

*Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998)....................... 14

27

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893 (1976)................................... 10

*McNeil v. Director, Patuxent Institution,* 407 U.S. 245, 246 (1972).................... 10, 17

28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1

*Moore v. Tartler,* 986 F.2d 682, 686 (3rd Cir.1993) ............................................................ 11, 13
*Navarro v. Block,* 250 F.3d 729 (9th Cir.2001) ........................................................................ 15
*Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992) ...................................................... 10, 13, 20
*Parratt v. Taylor,* 451 U.S. 527, 535 (1981)................................................................................ 9
*Patton v. Przybylski,* 822 F.2d 697, 700-01 (7th Cir.1987) ........................................................ 10
*People v. North*, 112 Cal.App.4th 621, (2003 1st Dist.)....................................................... 4, 6, 12, 20
*Perez v. Ledesma,* 401 U.S. 82, 125 (1971).............................................................................. 17
*Phyle v. Duffy*, 68 S.Ct. 1131, 334 U.S. 431 (1948). .............................................................. 5, 20
*Pitts v. County of Kern*, 17 Cal.4th 340, 363 (1998) ................................................................... 5
*Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) .................................................................. 8
*Rinker v. Napa County*, 831 F.2d 829, 831 (9th Cir.1987).......................................................... 9
*Saucier v. Katz*, 533 U.S. 194, 201-202 (2001) ......................................................................... 15
*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ........................................................................... 15
*Spruytte v. Walters*, 753 F.2d 498, 510-511 (6th Cir. 1985).................................................. 16, 17
*Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 715 (1974) .................................................. 14
*United States v. Lanier*, 520 U.S. 259, 265 (1997)..................................................................... 15
*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 842-843 *("Venegas II")* ................... 21
*Wilkins v. May*, 872 F.2d 190, 194 (7th Cir.1989)...................................................................... 10
*Yamaguchi v. United States Dept. of Air Force*, 109 F.3d 1475, 1481 (9th Cir.1997).................... 8

## Statutes

42 U.S.C.§1983........................................................................................................... 9, 10, 17
Cal. Gov't Code §12550 ...................................................................................................... 6
Cal. Government Code §821.6.............................................................................................. 21
Cal. Penal Code § 290(f)(1) ........................................................................................... 4, 5, 8
Cal. Penal Code §11075...................................................................................................... 6
California Constitution, article V, sec. 13.............................................................................. 5
Fed.R.Civ.P. 8(a)(2)........................................................................................................... 14
Fed.R.Civ.P. Rule 12(b)(6) ........................................................................................... 8, 9, 15
*Forrester v. White*, 484 U.S. 219, 229 (1998) ........................................................................ 19
Government Code section 12524........................................................................................... 5

**INTRODUCTION**

This case arises from the wrongful imprisonment of the plaintiff for a period of almost 18 months, after expiration of the time for the State to seek review of a decision of the Court of Appeal which struck down the statute the plaintiff was convicted and sentenced under --- on a term of 25 years to Life, as a matter of "three strikes"--- as void for vagueness. Despite this unequivocal action removing the lawful basis for his custody, no action was taken to respond to the change in the law with steps to arrange for the plaintiff's release. Instead, through 'deliberate indifference', the defendants did nothing to alert the sentencing court, or the plaintiff, and, in fact, ultimately sought to resist his habeas petition, on the wholly spurious grounds that the statute should be applied to plaintiff despite its having been declared void by the appellate court. Plaintiff brought this case seeking damages for violation of his rights, and false imprisonment.

Defendants now move to dismiss Plaintiff's First Amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), alleging (1) that the complaint fails to allege facts sufficient to show that a cognizable legal duty was owed by defendants to plaintiff; (2) that the defendants are entitled to qualified immunity; (3) that former California Attorney General Bill Lockyer should be afforded absolute prosecutorial immunity; and (4) that the Bane Act fails because the defendants did not act with the requisite threats, intimidation or coercion; or discriminate against a protected class.

Plaintiff hereby answers and opposes the defendants' motion.


**STATEMENT OF FACTS**

**1. Procedural History**

Plaintiff William Henry Cousins was convicted of violation of, Failing To Inform Law Enforcement Agency of New Address Where Registration Is Based On A Felony Conviction, on January 12, 2000. He was sentenced to an indeterminate term of 25 years to Life,[1] and entered the custody of the California Department of Corrections and Rehabilitation ("CDCR" or "the

---

[1] At trial, the prosecutor argued that Mr. Cousins, who was homeless and living out of his car, violated the statute when he failed to notify authorities after he supposedly changed "locations",

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1  Department") shortly thereafter.  His appeal was denied by the Sixth District Court of Appeal,

2  and he was denied review by the California Supreme Court.

3        On October 9, 2003, the First District Court of Appeal, in a published decision,

4  overturned Cal. Penal Code § 290(f)(1), finding the statute void for vagueness because it did not

5  give transient sex offenders fair notice of what to do to conform with registration requirements

6  governing changes of location.  *People v. North*, 112 Cal.App.4th 621, (2003 1st Dist.)[2]  The

7  office of the California Attorney General were counsel for the State as Respondent in *People v.*

8  *North*.

9        After this decision, despite their undoubted collective knowledge that some unknown

10  number of state prisoners convicted under the void statute would now be entitled to have their

11  convictions vacated, and be released, none of the defendants or any of their John Doe defendant

12  assistants, delegees or other hirelings took any action to notify the sentencing court, or plaintiff

13  or his attorneys, of the change in the law and its impact on his conviction; on information and

14  belief, they never took notice of the change, and its impact on any prisoners in their custody, at

15  all.

16        Plaintiff filed an "Original Petition For Writ Of Habeas Corpus" in the California

17  Supreme Court in January, 2004, arguing that he was entitled to release because the statute had

18  been invalidated.  The petition was duly served on the defendants, who, in an "Informal

19  Response" submitted some fourteen months later, argued that --- despite its having been declared

20  void for vagueness --- the statute was still valid in the plaintiff's case.  Later on, however, after

21

22  by moving his car approximately 50 feet from his last alleged transient "address".

23  [2] "After careful consideration of the disputed language in its statutory context, and in light of its
legislative purpose, we are constrained to agree that <u>section 290</u> does not give transient sex

24  offenders fair notice of what they must do to conform with the registration requirements
governing changes of location.  We also conclude transient offenders can only guess at what is

25  meant by the requirement that they register at every location they regularly occupy in a single
jurisdiction.  <u>Section 290</u> fails to provide even minimal guidelines for the registering authorities

26  in these regards, thus encouraging arbitrary enforcement.  Accordingly, we hold the provisions
governing changes of location and registration at multiple locations within a jurisdiction

27  unconstitutionally vague." *People v. North*, 112 Cal.App.4th at 624 (underline in original).

28                                       4

1    the Supreme Court issued an Order on the defendant Director of Corrections to Show Cause why

2    the plaintiff should not be released, defendants agreed that the writ should issue.  Return To

3    Order To Show Cause Conceding The Issuance Of The Writ Of Habeas Corpus, 4:7-9, Cal. Sup.

4    Ct. No. S122142, ("The jury convicted petitioner of the violation of section 290(f)(1).  As such,

5    the conviction is not valid and the writ should issue.")  Mr. Cousins was released from the

6    CDCR on June 2, 2005, 19 months and 24 days after the law he was sentenced under was

7    declared void.

8         **2.  Duties of the Attorney General**

9         Under the California Constitution, article V, sec. 13 the Attorney General of the State

10   acts as the chief law enforcement officer, and is under a duty "to see that the laws of the State are

11   underline{uniformly} and <u>adequately</u> enforced." (Emphasis added.)  The Attorney General is particularly

12   charged with the duty of supervising the administration of the criminal laws.  *Phyle v. Duffy*, 68

13   S.Ct. 1131, 334 U.S. 431 (1948).  The Attorney General's "supervisory duties include the

14   training and education of district attorneys and police personnel in the proper exercise of their

15   duties and the limits of their authority." *Kilgore v. Younger*, 30 Cal.3d 770, 784 (1982).

16        Courts have recognized the mechanism provided in the California Constitution by which

17   the Attorney General can fulfill this mandate.  "[S]ince 1957, Government Code section 12524

18   has authorized the Attorney General to 'conference' with the district attorneys to discuss their

19   duties 'with the view of uniform and adequate enforcement' of state law." *Pitts v. County of*

20   *Kern*, 17 Cal.4th 340, 363 (1998) (emphasis in original).  "[T]he Attorney General has 'direct

21   supervision over every district attorney … in all matters pertaining to the duties of their … office

22   [], and may require any of said officers to make reports concerning the investigation, detection,

23   prosecution, and punishment of crime in their respective jurisdictions as to [sic] the Attorney

24   General may seem advisable.' This is most reasonably interpreted to include oversight of policies

25   formulated and training conducted in connection with the district attorney's preparation for and

26   prosecution of state criminal violations." *Pitts, supra* at 358 quoting Cal. Const., art. V, §13; Cal.

27

28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

5

1 Gov't Code §12550 (emphasis added in *Pitts*).[3]

2     In regards to changes in the law due to appellate court decisions the Attorney General, as

3 counsel for the People in all actions in the appellate courts, per §12512 of the Government Code,

4 including *People v. North*, is under a specific duty: "After judgment in any of the causes referred

5 to in §12512, the Attorney General <u>shall direct the issuing of such process</u> as may be necessary

6 to carry the judgment into execution." (Id., Emphasis added.)

7     Here, the Attorney General failed to investigate the criminal records he maintains in order

8 to discover whether plaintiff or any other person convicted under the invalidated statute

9 remained in prison, and take steps to ensure their release; and thus he did not "execute" the

10 judgment in *North*, and defaulted on his Constitutional duty "to uniformly and adequately

11 enforce the laws of the State", and to "direct the issuing of such process" by his office, the

12 county prosecutor, and/or the defendant Corrections officials, as was necessary to carry the

13 decision into effect in other cases which had been prosecuted under the statute, including the

14 plaintiff's case.

15 **3. Duties of Corrections Officials**

16     The organizational framework for the California Department of Corrections and

17 Rehabilitation is set forth in its Operations Manual ("DOM").  There are a number of units

18 within the CDCR that have the responsibility for maintaining records pertaining to prisoners and

19 their sentences, and to track and apply the consequences of changes in the law.  The Correctional

20 Case Records Unit ("CCRU"):

21 - Administers and is responsible for planning and developing policies governing the CDCR uniform case records system.
22 - Assumes responsibility and accountability for the accurate interpretation and application
23    of laws, administrative standards, and court decisions related to the processing, maintenance, and control of inmate and parole records.

---

[3]   The Attorney General is also specifically charged with compiling and maintaining "criminal offender record information."  Kilgore, supra at 785-786 citing Cal. Penal Code §11075.  Sec. 11075 defines "criminal offender record information" as "records and data compiled by criminal justice agencies for purposes of identifying criminal offenders and of maintaining as to each such offender a summary of arrests, pretrial proceedings, the nature and disposition of criminal charges, sentencing, incarceration, rehabilitation, and release."

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

- [I]s the primary liaison with other governmental agencies, courts, legislators, and other persons on matters related to the records system.

DOM, Ch.1, Art.1, §11010.9.1.7.1.2.

Under this section, the "Responsibility of Case Records Staff" includes "Act[ing] as consultant to departmental staff, court officers, inmates, and other governmental agencies or authorized persons regarding:

- Departmental responsibility under pertinent laws and administrative standards.
- Interpretation and application of laws and standards related to inmate receipt, sentencing, paroling, and release.
    In addition, the CCRU contains within it the Legal Processing Unit ("LPU").

According to the DOM, the LPU:

- Reviews legal documents on cases with sentencing discrepancies and communicates with the court, DA, and the Office of the Attorney General (OAG) to resolve discrepancies.
- Functions as liaison between CDCR and related city, county, and State agencies on matters concerning the application of sentence and parole laws.
- Acts as consultant/advisor to CDCR staff, court offices, and other governmental agencies or authorized persons regarding CDCR responsibility under pertinent laws and administrative standards, interpretations, and applications of laws and standards related to inmate receipt, sentencing, parole, and release.

DOM ch.1, art.1, §11010.9.1.7.1.2

Lastly, Chapter 7, Art.13 of the DOM, "Court Decisions, Orders and Releases", sets forth policies and duties regarding analysis of changes in law, and their impact on CDCR policies, procedures, and prisoners. This section in particular addresses the impact of case law:

- Court decisions and court orders shall be processed in a uniform manner to ensure proper disposition.
- This section sets forth uniform procedures for handling and processing court orders and court decisions.
- Published opinions become case law and shall be evaluated, and instructions issued by an Administrative Bulletin, revision to this manual or regulation change if applicable.
- Published Appellate Court decisions are effective the date they become final and have the same application on all similar cases and circumstances. They only apply prospectively unless ordered in the decision or in subsequent related decisions to be applied retroactively. Unpublished Appellate Court decisions apply only to the individual case considered.

7

Dom, Ch. 7, Art. 13 §§ 73040.1-73040.5

Despite this elaborate and carefully detailed structure, the large and varied quantities of information it deals with, and the many intricate functions and processes it regularly serves and carries out with the information it receives and generates, those unknown, named John Doe defendant staff members responsible for seeing that changes in the law are "uniformly and adequately enforced", and that legal process issues to accomplish this, evidently took no notice of the invalidation of this law, P.C. 290(f)(1), which had been regularly used to convict and sentence an unknown number of offenders --- even including one who had been sentenced under it to a term of 25 years to life, i.e., the plaintiff.  In the circumstances, only a grand indifference can explain such a complete, categorical default in respect of the "paradigmatic" liberty interest..

**ARGUMENT**

**I.  LEGAL STANDARD FOR DISMISSAL**

In determining the sufficiency of the complaint in a motion to dismiss, all allegations of material fact are accepted as true and should be construed in the light most favorable to the plaintiff.  *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).  "A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990) (internal citations omitted).  "Thus, these liberal pleading rules only require that the averments of the complaint sufficiently establish a basis for judgment against the defendant." *Yamaguchi v. United States Dept. of Air Force*, 109 F.3d 1475, 1481 (9th Cir.1997) (internal citations omitted).

Our system of notice pleading "do[es] not require a claimant to set out in detail the facts upon which he bases his claim."  *Conley v. Gibson*, 355 U.S. 41, 47, (1957).  Instead, "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id. at 47., quoting

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1    F.R.Civ.P. 8(a)(2).  See also, *Yamaguchi, supra,* 109 F.3d 1475 (9th Cir.1997).  The Supreme

2    Court has stated that "the Rule mean[s] what it sa[ys]."  *Leatherman v. Tarrant County Narcotics*

3    *Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).  Consequently, a motion to

4    dismiss under Fed.R.Civ.P. Rule 12(b)(6) may be granted only when "it appears beyond doubt

5    that the plaintiff can prove no set of facts in support of his claim which would entitle him to

6    relief." *Conley, supra* 355 U.S at 45-46 (1957).  Thus, Defendants carry a very heavy burden on

7    their motion.

8        **II. THE COMPLAINT SUFFICIENTLY STATES COGNIZABLE LEGAL**
         **DUTIES OWED BY THE DEFENDANTS TO THE PLAINTIFF AND FACTS**
9        **SUFFICIENT TO GIVE DEFENDANTS FAIR NOTICE OF PLAINTIFF'S**
         **CLAIMS.**
10

11        The defendants argue that the First Amended Complaint ("FAC") is "fatally defective,

12   because it fails to identify any basis for a legal duty owed by defendants in this case"

13   Defendants' Motion to Dismiss ("MTD") 4:17-18.

14        To sustain an action under 42 U.S.C.§1983, a plaintiff must show (1) that the conduct

15   complained of was committed by a person acting under color of state law; and (2) that the

16   conduct deprived the plaintiff of a constitutional right.  *Balistreri, supra,* 901 F.2d 696 (9th Cir.

17   1990) (citing *Rinker v. Napa County*, 831 F.2d 829, 831 (9th Cir.1987) (citing *Parratt v. Taylor*,

18   451 U.S. 527, 535 (1981).)  "A person deprives another of a constitutional right within the

19   meaning of § 1983 if he does an affirmative act, participates in another's affirmative act <u>or omits</u>

20   <u>to perform an act which he is legally required to do and thereby causes the deprivation of which</u>

21   <u>the plaintiff complains.</u>"  *Ellis v. City of Pittsburgh*, 1996 WL 266126 (N.D. Cal. 1996) (citing

22   *Leer v. Murphy,* 844 F.2d 628, 633-634 (9th Cir. 1988) (emphasis added and internal citations

23   omitted).

24        Plaintiff's First Amended Complaint  asserts theories of liability based on constitutional

25   duties owed by the defendants (named and unnamed) to the plaintiff, discussed below.  Plaintiff

26   alleged violations of his rights to Due Process under the Fourteenth Amendment;  against

27   unreasonable seizure under the Fourth Amendment and cruel and unusual punishment under the

28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1    Eighth Amendment;  against false arrest and imprisonment under California statutory and

2    common law; and for violations of these rights as protected by the California Bane Act.  Further

3    research and reflection lead to the conclusion that no claim lies under the Fourth Amendment; so

4    plaintiff agrees it should be dismissed.[4]

5    **A. The Due Process Violation.**

6    It is well established that deprivation of one's liberty is actionable under the Due Process

7    Clause of the Fourteenth Amendment to the U.S. Constitution.  *McNeil v. Director, Patuxent*

8    *Institution,* 407 U.S. 245, 246 (1972). ("Liberty is protected from unlawful state deprivation by

9    the due process clause of the Fourteenth Amendment."); *Haygood v. Younger*, 769 F.2d 1350,

10   1354 (9th Cir. 1985) (en banc).  When a plaintiff alleges a due process violation for wrongful or

11   over-extended incarceration, in deprivation of a liberty interest under §1983, the court applies a

12   three-prong test:

13   Under *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893 (1976), three factors are
     used to evaluate whether procedural protections comport with due process: (1) the private

14   interest affected by the official action; (2) the risk of an erroneous deprivation of such
     interest through the procedures used and probable value of additional safeguards; and (3)

15   the Government's interest.

16   *Fairley v. Luman*, 281 F.3d 913, 918 fn. 6 (9th Cir. 2002).

17   Here, the private interest affected is plaintiff's right to freedom from illegal incarceration,

18   described as the "paradigmatic liberty interest" under the Due Process clause.  *Oviatt v. Pearce,*

19   954 F.2d 1470, 1474 (9th Cir. 1992).  The risk of erroneous deprivation arising from failure to

20   follow established procedures for interpretation and application of case law, including notifying

21   trial courts of changes in the law which invalidate current sentences is substantial; and, clearly,

22

23

24   _____

25   [4]    See, e.g, *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir.1989) (Fourth Amendment does not
     govern constitutional claims arising from the period after a person is arrested) and *Patton v.*

26   *Przybylski,* 822 F.2d 697, 700-01 (7th Cir.1987) (claim for wrongful imprisonment would be
     analyzed "under the Fourth Amendment if the arrest was improper, or under the due process

27   clause if the arrest was proper").

28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1    the CDCR defendants and the State obviously have no interest whatsoever in failing to follow

2    their own policies and procedures, [5] or in keeping anyone in prison without lawful basis.

3    Likewise, the Attorney General has no interest in failing to adequately administer the

4    criminal laws of the State or failing to notify necessary parties --- obviously including the trial

5    court <u>and</u> the CDCR --- of the invalidation of a criminal statute that can no longer be used to

6    prosecute persons or hold them in custody, so that "such process as may be necessary" may be

7    issued, to "enforce" the change in the law.  The FAC therefore clearly alleges a cognizable legal

8    theory and a sufficient factual predicate to support his claim.

9    **B. The Eighth Amendment Violation**

10   It is also well established that detention beyond a term permissible by law could

11   constitute cruel and unusual punishment under the Eighth Amendment "if it is the result of

12   'deliberate indifference' to the prisoner's liberty interest". *Haygood v. Younger, supra* at 1354.

13   Most commonly an Eighth Amendment claim for wrongful incarceration is made out

14   when a prisoner brings evidence to the attention of a state official that his or her detention is

15   without legal grounds. "Deliberate indifference has been demonstrated ... where prison officials

16   were put on notice and then simply refused to investigate a prisoner's claim" that he is entitled to

17   be released. *Moore v. Tartler,* 986 F.2d 682, 686 (3rd Cir.1993) (emphasis added). *See Davis v.*

18   *Hall,* 375 F.3d 703, 716 (8th Cir.2004); *Haygood v. Younger,* 769 F.2d 1350, 1355 (9th

19   Cir.1985) (concluding that the prison officials were deliberately indifferent to Haygood's

20   constitutional rights because they failed to address his credible evidence that he was entitled to

21   release); *Alexander v. Perrill,* 916 F.2d 1392, 1398 (9th Cir.1990) (prison officials cannot "stand

---

22

23   [5]   "[W]e note that *the same rules of construction and interpretation which apply to statutes*
     *govern the construction and interpretation of rules and regulations of administrative agencies.*
24   [W]e begin with the fundamental rule that a court should ascertain the intent of the Legislature so
     as to effectuate the purpose of the law.  An equally basic rule of statutory construction is,
25   however, that courts are bound to give effect to statutes according to the usual, ordinary import
     of the language employed in framing them. Although a court may properly rely on extrinsic aids,
26   it should first turn to the words of the statute to determine the intent of [those promulgating the
     regulation.]"  *In re Player* 146 Cal.App.4th 813, 825-826 (2007 Dist.4) (emphasis added.)
27   (Petitioner granted habeas corpus relief after he was denied credits according to the procedures

28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1  by idly after an inmate has raised the prospect that he is being unlawfully incarcerated and has

2  provided documentary evidence in support of his claim"). *See also Garcia v. City of Chicago,*

3  *Ill.,* 24 F.3d 966, 974 (7th Cir.1994) ("[W]hatever haziness obscures the exact contours of a duty

4  to investigate burns off once the authorities *know* that they have no basis for detention.")

5  (Emphasis in original).

6      In the case at bar, the office of the Attorney General were counsel in the case that resulted

7  in the invalidation of the statute, and thus <u>knew</u> of the change in law, *ab initio*.  Therefore, they

8  were under the duties assigned to the Attorney General, to initiate 'necessary process' for

9  <u>uniform</u> and <u>adequate</u> enforcement of the criminal laws.  In addition, certain staff of the CDCR,

10  according to the DOM, must follow and interpret case law as it applies to persons within its

11  custody.  DOM, Ch.1, Art.1, Sec.11010.9.1.7.1.2; above, p.5-6.  Because Mr. North was in the

12  custody of the CDCR when *People v. North* was decided, they too <u>knew</u> of the change in law but

13  completely defaulted in their duties, which caused the prolonged and wrongful incarceration of

14  plaintiff.[6]

15      Although Mr. Cousins' claim is different, in that these defendant state officials'

16  knowledge was derived from their direct involvement with the change in law, in *North* --- as

17  opposed to receiving notice from the prisoner himself, as in *Haygood*, etc. --- the result is the

18  same: a total failure to follow established policies and procedures.

19      Deliberate indifference has been found when officials have simply failed to follow policies

20  and procedures, as happened here.

21      [D]eliberate indifference to a person's constitutional rights occurs when the need for
       more or different action, "<u>is so obvious, and the inadequacy [of the current procedure] so

22     likely to result in the violation</u> of constitutional rights, that the policymakers … can
       reasonably be said to have been deliberately indifferent to the need." Whether a local

23     government entity has displayed a policy of deliberate indifference is *generally a

24     question for the jury.*

25  set forth in the DOM and Title 15 of the California Code of Regulations.)

26  [6]   In a somewhat older case, the CDCR predecessor Adult Authority was admonished by the
     Supreme Court that the burden of getting a sentence 'corrected' was not on the prisoner: "On the

27  contrary, in such an event it is the People who are under a duty to bring the error to the attention
     of the trial court as soon as possible."  *In re Sandel* (1966) 64 Cal.2d 412, 418-419.

28
                                                    12

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1477-1478 (9th Cir. 1992) (brackets and italics in *Lee*).  See also *Gibson v. County of Washoe,* 290 F.3d 1175, 1187 (9th Cir.2002) (Deliberate indifference is tantamount to a knowing disregard.).

       Deliberate indifference has also been found as a result of "innocent error."

       Incarceration of an individual beyond the term of his sentence is "quintessentially punitive." Even if such imprisonment <u>is the result of an innocent error on the part of the state officials</u> who were responsible, it is still punitive in nature, though the mistaken nature of the punishment may bear on whether the punishment was deliberately imposed. Anything more than a *de minimis* incarceration beyond a prisoner's proper sentence satisfies the requirement, under *Farmer,* 511 U.S. at ----, 114 S.Ct. at 1977, that the punishment, if inflicted along with the culpable state of mind, be "sufficiently serious" to

pose a constitutional violation.. Here, plaintiff was imprisoned up to two years beyond his legal release date. The deprivation was sufficiently serious to support Campbell's Eighth Amendment claim.

*Campbell v. Illinois Dept. of Corrections,* 907 F.Supp. 1173, 1179-1180 (N.D.Ill. 1995) citing *Sample v. Diecks,* 885 F.2d 1099, 1108-09 (3rd Cir.1989); *see also Moore v. Tartler,* 986 F.2d 682 (3d Cir.1993); and *Lundblade v. Franzen,* 631 F.Supp. 214 (N.D.Ill.1986).  The error here was not innocent, but, rather, it was a total disregard of duty, and risk, despite the high probability that prisoners other than North were crucially affected by the decision in his case.[7]

//

---

[7]     In *Farmer v. Brennan*, 511 U.S. 825, 840-842(1994), the Supreme Court, carefully went about defining the contours of "deliberate indifference." "Our decision that Eighth Amendment liability requires consciousness of a risk is thus based on the Constitution and our cases, not merely on a parsing of the phrase 'deliberate indifference.'  And we do not reject petitioner's arguments for a thoroughly objective approach to deliberate indifference without recognizing that on the crucial point (whether a prison official must know of a risk, or whether it suffices that he should know) the term does not speak with certainty."  * * * "In speaking to the meaning of the term, we said that 'it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [entity] can reasonably be said to have been deliberately indifferent to the need.'"  The Court specifically held that "the prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it."

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

**C. The common law violation of false imprisonment *cum* prolonged detention.**

Plaintiff also asserts a cause of action for false imprisonment. "False imprisonment under California law is the 'unlawful violation of the personal liberty of another.'" *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) quoting *Asgari v. City of Los Angeles*, 15 cal.4th 744, 757 (1997). "Under California law, a claim for false imprisonment grounded upon prolonged detention may arise if a person is 'deprived of his liberty after his jail term ends." *Martinez, supra*, 141 F.3d at 1380, quoting *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 715 (1974). "A jailer … may be liable if the jailer knows that the imprisonment is unlawful or if there is 'some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration.'" Id.

Given the duties and procedures in place at the CDCR to handle the exact circumstances of the case at bar, the circumstances present here should have caused a reasonable person to understand that the decision in *North* would affect all similar cases, determine what other people in CDCR custody were imprisoned under the voided statute, and notify the sentencing courts in all such cases. The question of reasonableness, however, and deliberate disregard for that matter, are questions for the jury. As such, plaintiff's claims should survive the instant motion to dismiss. All plaintiff must do is assert a cognizable legal theory and allege facts to put these defendants on notice of his claim; plaintiff has done that and more, and so should be permitted to present evidence to a jury, for a decision on whether he has met his burden.

**III. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE PLAINTIFF'S RIGHTS WERE CLEARLY ESTABLISHED.**

In setting out the standard to be applied by a district court in making a determination regarding the qualified immunity of state officials in a motion to dismiss, the Ninth Circuit expressed its concerns about doing so at such an early stage in the litigation:

> We note, again, the special difficulty of deciding the motion to dismiss a Defendant on qualified immunity grounds at this stage. Under the notice pleading standard of the Federal Rules, plaintiffs are only required to give a "short and plain statement" of their claims. Fed.R.Civ.P. 8(a)(2). Thus, when reviewing the sufficiency of a complaint before

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

14

1    receiving any evidence, our task is a limited one." The issue is not whether a plaintiff will
2    ultimately prevail but whether the claimant is entitled to offer evidence to support the
     claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)

3    As we recognized in *Kwai Fun Wong v. United States,* 373 F.3d 952 (9th Cir.2004), a
4    motion to dismiss on qualified immunity grounds puts the court in the difficult position of
     deciding "far-reaching constitutional questions on a non-existent factual record." *Id.* at
5    957. While "government officials have the right ... to raise ... qualified immunity defense
     on a motion to dismiss, the exercise of that authority is not a wise choice in every case."
6    *Id.* * * * As we decide the Defendants' motion, however, we are cautious not to
7    eviscerate the notice pleading standard in suits where qualified immunity is at issue. *See
     Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1125-26 (9th Cir.2002).

8

9    *Hydrick v. Hunter* 2007 WL 2445998, 3 (9th Cir. 2007)  Unless it is "beyond doubt" that a

10   plaintiff cannot prove facts that would entitle him to relief, a Rule 12(b)(6) motion must be

11   denied. *Navarro v. Block,* 250 F.3d 729 (9th Cir.2001).

12       Qualified Immunity is a legal determination to be made by the court, entailing a two-step

13   analysis:  State actors are entitled to qualified immunity unless the plaintiff can show (1) that a

14   constitutional right was violated on the facts alleged and (2) that the constitutional right violated

15   was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001).  Part two of the test

16   "focuses on the objective legal reasonableness of an official's act."  *Harlow v. Fitzgerald*, 457

17   U.S. 800, 818 (1982).  The immunity defense will fail if the official violates a clearly established

18   right, because "a reasonably competent public official should know the law governing his [or

19   her] conduct." *Harlow, supra,* 457 U.S. at 819.

20       The plaintiff need not establish that the defendants' "behavior had been previously

21   declared unconstitutional." *Blueford v. Prunty*, 108 F.3d 251, 254 (9th Cir. 1997).  A plaintiff can

22   show that a right is clearly established so long as the official had "fair warning" that his or her

23   conduct was impermissible.  *United States v. Lanier*, 520 U.S. 259, 265 (1997) and *Hope v.

24   Pelzer*, 536 U.S. 730, 740 (2002).

25       Furthermore, a state official will lose his or her qualified immunity if the statute or

26   regulation allegedly violated by the defendants "is actionable under §1983 <u>or bears upon the</u>

27   <u>claim of constitutional right that [plaintiff] asserts under §1983</u>." *Davis v. Scherer*, 438 U.S. 183,

28

15

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1  193 (1984) (emphasis added). "At least two courts have interpreted *Davis* to mean that when

2  faced with a procedural due process claim, a defendant who violates a clearly established state

3  statute or regulation creating a property interest cannot claim to be protected by qualified

4  immunity."  *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1285 (11th Cir. 1998) citing *Carlo v.*

5  *City of Chino*, 105 F.3d 493, 501-502 (9th Cir. 1997), *cert. denied,* 523 U.S. 1036, 118 S.Ct. 1336

6  (1998) and *Spruytte v. Walters*, 753 F.2d 498, 510-511 (6th Cir. 1985) (denying prison officials

7  qualified immunity for due process violations where the meaning of a state regulation creating

8  the property right was clearly established).   Certainly a principle that applies to a property right

9  applies *a fortiori* to a Liberty Interest; that is elementary.

10      The purpose of qualified immunity is to balance "the interests in vindication of citizens'

11  constitutional rights and in public officials' effective performance of their duties' by making it

12  possible 'for officials reasonably to anticipate when their conduct may give rise to liability for

13  damages.' "  *Carlo v. City of Chino*, 105 F.3d 493 (9th Cir. 1997), quoting *Anderson v.*

14  *Creighton*, 483 U.S. 635, 639-640 (1987).  Qualified immunity does not protect the 'plainly

15  incompetent' or 'those who knowingly violate the law.' *Malley v. Briggs*, 475 U.S. 335, 341

16  (1986).

17      Most importantly, however, "[i]mmunity generally is available only to officials

18  performing discretionary functions." *Harlow, supra*, 457 U.S. at 816.  If qualified immunity is

19  raised in a motion to dismiss (or as an affirmative defense), the official must plead facts which, if

20  true, would establish that he or she was acting within the scope of his or her discretionary

21  authority when the allegedly violative conduct occurred.  *Davis v. Holly*, 835 F.2d 1175, 1178

22  (6th Cir. 1987).  That has not been done.

23                    **          **          **          **

24      Here, the plaintiff has alleged false imprisonment in violation of his rights to Due Process

25  and protection from Cruel and Unusual Punishment, based on the invalidation of the statute he

26  was committed under.  More specifically, he has alleged that named and/or unidentified John

27  Doe defendants failed in mandatory duties to take steps to ensure his release, once the statute

28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1    was struck down.  In this latter respect, as should be self-evident from the nature of the right

2    asserted, the law is very clear: (1) When there is a declaration of total unconstitutionality, a court

3    "stands ready to reverse any conviction under the statute." *Perez v. Ledesma*, 401 U.S. 82, 125

4    (1971); and (2) When a sentence expires the state loses the power to continue a person's

5    detention.  *McNeil v. Director, Patuxent Institution*, 407 U.S. 245 (1972).  In light of the

6    mandatory duties placed upon the Attorney General and the CDCR, as set forth in the DOM,

7    these two obvious and well established principles --- particularly taken with the obvious risk,

8    when a criminal statute is stricken in one prisoner's case, that others may be affected --- the right

9    against failure by custodial officials maintain awareness of changes in the law, so as to prevent

10   or end wrongful imprisonment, must be seen as clearly established.  As noted, a defendant who

11   violates a regulation which "bears upon the claim of constitutional right (asserted) under §1983"

12   is not entitled to qualified immunity.  *Davis v. Scherer, supra*, 468 U.S. at p.193; and see

13   *Harbert Intern., Inc. v. James, supra*, 157 F.3d 1271, 1285 (11th Cir. 1998); and *Spruytte v.*

14   *Walters, supra*, 753 F.2d 498, 510-511 (6th Cir. 1985).

15        Plaintiff alleges that it was defendants' failure to follow mandatory procedures set forth

16   in the DOM that caused the violations of his rights, and those procedures bear directly on the

17   claims he asserts. In *Bradford v. State of California*, state records keepers failed to make

18   appropriate record entries regarding the dismissal of criminal charges, resulting in the plaintiff's

19   groundless arrest.  The court recognized that the duty to record the dismissal was designed to

20   "protect against the particular type of harm suffered by the plaintiff." *Bradford v. State of*

21   *California*,36 Cal.App.3d 16, 21 (Dist. 2 1973).

22        Here, the defendant state officials failed to perform explicit job duties, set forth in the

23   DOM, that were designed to protect against the particular type of harm of which the plaintiff

24   complains.  The DOM makes clear that what is at stake if an error in the responsibilities and

25   duties of records staff occurs, is the very type of deprivation that plaintiff here complains about.

26   The records staff, therefore, have "fair warning" against failure to follow the procedures as set

27

28

1    forth in the DOM.  Thus, it can fairly be said that the rights of plaintiff are clearly established.[8]

2        The defendants also had "fair warning" because state records keepers have been found

3    liable for their failure to follow their ministerial duties.  In *Bradford, supra,* state employees who

4    failed to make appropriate record entries regarding the dismissal of criminal charges were found

5    liable because they were under a mandatory duty to record the entries. *Bradford v. State of*

6    *California*, 36 Cal.App.3d at 21.  In *Oviatt v. Pearce*, the defendants were liable for failing to

7    implement internal procedures for tracking inmate arraignments when it resulted in prolonged

8    detention.  *Oviatt*, supra 954 F.2d at 1477-1479.

9        Moreover, the mandatory language in the DOM itself creates, or affirms, the plaintiff's

10   liberty interest.  The defendants are under various mandatory duties under the DOM; and,

11   conversely, the plaintiff is the beneficiary of the performance of those duties, and thus has a

12   liberty interest in their execution.  By failing to follow the procedures in the DOM the defendants

13   have deprived him of his liberty by failing to follow the procedures they have adopted for the

14   protection of his fundamental rights.

15       Lastly, the defendants have not alleged that state officials here were acting within the

16   scope of any discretionary authority; nor can they.  As is obvious from the fundamental character

17   of the constitutional protections against wrongful imprisonment, the duties set forth in the DOM

18   are mandatory, and ministerial, as affirmed in *In re Sandel, supra*, and failure to follow them is

19   anything but discretionary on the defendants' part.  See, *Harlow, supra*, 457 U.S. at 816; *Davis*

20   *v. Holly, supra*, 835 F.2d at 1178.

21       Thus, these defendants, including the John Doe defendants, are not entitled to qualified

22   immunity.

23   *//*

24

25

26   [8]    Chapter 7, art.1, §71010.9, states: If an error causes an inmate, resident, parolee, or releasee
27   to be released from a facility or the jurisdiction of the Department prior to or later than the
     correct release date, a complete report with appropriate recommendation to eliminate such
28   incidents shall be submitted through the local chain of command to the Warden.

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

18

## IV. FORMER ATTORNEY GENERAL BILL LOCKYER IS NOT ENTITLED TO IMMUNITY UNDER FEDERAL OR STATE LAW.

**1. Defendant Lockyer, and unnamed Doe defendants, were not acting in their role as advocates before a court, therefore they are not entitled to absolute immunity.**

Although it has been described as an "absolute immunity," the Court has granted immunity only when a prosecutor is acting in his or her role as an "advocate for the state." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). In determining prosecutorial immunity a court examines "the nature and function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1998). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question…We have been 'quite sparing' in our recognition of absolute immunity, and have refused to extend it any 'further than its justification would warrant.'" *Burns v. Reed*, 500 U.S. 478, 486-487 (1991) (internal citations omitted). Stated another way, in *Buckley*, the Court wrote, "[t]he question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993)

Indeed, the Court has drawn the line very narrowly. See, *Burns v. Reed*, 500 U.S. 478, 492-496 (1991) (No absolute immunity for providing legal advice to the police during pretrial investigation, even in anticipation of a future prosecution.); *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (No absolute immunity for a prosecutor's averment in a certificate of probable cause for a warrant.).

In *Imbler*, *supra,* 424 U.S. at 410 (1976), the Court held that a prosecutor was immune from suit for "initiating and pursuing a criminal prosecution." However, the Court made a clear distinction between "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." Id. at 430-431.

In *Buckley*, the Court held that, "acts undertaken…in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as advocate for the State, are entitled to the protections of absolute immunity," a prosecutor is not acting as an

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

advocate when holding a press conference or in fabricating evidence concerning an unsolved crime. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-278 (1993). The Court explained, "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." Id.

Here, had he (or his responsible underlings) followed the obvious steps and procedures needed to vindicate the plaintiff's right in the wake of the decision in *People v. North*, the action taken would not have been advocacy. As noted above, the Attorney General is particularly charged with the duty of supervising the administration of the criminal laws. *Phyle v. Duffy*, 68 S.Ct. 1131, 334 U.S. 431 (1948). It is in his role as administrator that plaintiff argues that the Attorney General failed in his duty "to see that the laws of the State are <u>uniformly</u> and <u>adequately</u> enforced," California Constitution, article V, sec. 13. (Emphasis added), and to ensure that the 'necessary process' would issue so that the laws would be carried out. Quite simply, it was the Attorney General's responsibility to make sure that the procedures set in place were adequate to ensure that, when changes in the law took place, state officials under his supervision, in his office and the CDCR, followed up appropriately. As noted, a chief policy maker can be liable for his or her decision not to instigate adequate procedures. *Oviatt, supra*, 954 F.2d at 1477-1499. Here it seems clear that the actual and appropriate distribution of responsibility --- where it is likely that the responsibility for the correct procedures probably was delegated --- must be ascertained through appropriate discovery; so this claim is premature.

**2. There is no causal relationship between the prosecution process and defendant Lockyer's role as chief administrator of the laws of the state.**

Defendants have also failed to carry their burden of establishing the causal connection between the prosecution process and defendant Lockyer's administrative role. State courts evaluate prosecutorial immunity by determining whether there is a causal relationship between the challenged conduct and the prosecution process. *Ingram v. Flippo*, 74 Cal.App.4th 1280,

20

1   1292-1293, (Dist. 6 1999).  Cal. Government Code §821.6 provides: "A public employee is not

2   liable for injury caused by his [or her] instituting or prosecuting any judicial or administrative

3   proceeding within the scope of his [or her] employment…"

4       The language of the statute is clear; a prosecutor is immune for initiating or prosecuting a

5   proceeding, and any action causally related to that action.  In *Citizens Capital Corp. v. Spohn*,

6   the prosecutor was entitled to immunity when he initiated an investigation and published the

7   official results.  *Citizens Capital Corp. v. Spohn*, 133 Cal.App.3d 887, 889 (1982).

8       However, the plaintiff here is not complaining about an "injury caused by his instituting

9   or prosecuting any judicial or administrative proceeding." Gov't Code §821.6.  Instead, plaintiff

10  alleges that defendant Lockyer, and/or unnamed John Doe defendants, failed simply to process

11  information and forward it to the sentencing court.  Notably, absent from this equation is any

12  causal connection to the "prosecution process" as required by the court in *Flippo v. Ingram,* 74

13  Cal.App.4[th] *supra* at 1280.  Here again, therefore, the demand for immunity must be denied.

14  **IV. THE BANE ACT DOES NOT REQUIRE DISCRIMINATORY ANIMUS.
    FURTHER, PLAINTIFF'S COMPLAINT ASSERTS FACTS THAT
15  CONSTITUTE COERCION UNDER THE STATUTE**.

16      Defendants argue that plaintiff's Bane Act claim should fail because (1) plaintiff does not

17  and cannot allege that the defendants acted with threats, intimidation or coercion, and (2) that

18  plaintiff does not allege he was denied any right based on his sex, race, color, religion or other

19  protected classification. (MTD, 9:16-20).

20      Plaintiff does allege coercion, in that he was held against his will by these defendants and

21  such incarceration constitutes coercion, because it was accomplished physically, through the use

22  of forcible restraints in the form of a prison cell.  In common experience, the definition of

23  coercion rests mainly on the use or threat of force.  This seems beyond argument.

24      As to the second claim, the Bane Act quite clearly does not require a showing of

25  discriminatory animus or intent, nor does it require membership in a protected class, as the

26  Supreme Court of California has unequivocally held. See, *Venegas v. County of Los Angeles*

27  (2004) 32 Cal.4[th] 820, 842-843 *("Venegas II")*, overruling *Boccato v. City of Hermosa Beach*

28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

21

1   (1994) 35 Cal.Rptr.2d 282.

2     Thus, plaintiff has alleged facts sufficient to state a claim under the Bane Act, because he

3   has alleged that the defendants deprived him of various rights by forcing him to remain

4   incarcerated and because he need not allege membership in a protected class.

5   **CONCLUSION**

6   For all the above reasons, the Court should deny defendants' motion in all respects and

7   allow the case to proceed.

                 Respectfully Submitted,

8     DATED: October 9, 2007

9

10              W. GORDON KAUPP
                DENNIS CUNNINGHAM
                Attorneys for William Henry Cousins

11

12              By: */s/ Gordon Kaupp*
                  GORDON KAUPP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS