EDMUND G. BROWN JR., Attorney General
 of the State of California
TYLER B. PON
 Supervising Deputy Attorney General
WILFRED T. FONG (State Bar No. 154303)
 Deputy Attorney General
 1515 Clay Street
 P.O. Box 70550
 Oakland, CA 94612-0550
 Telephone: (510) 622-2114
 Facsimile:  (510) 622-2121

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM HENRY COUSINS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BILL LOCKYER, (former) ATTORNEY GENERAL OF CALIFORNIA, in his individual capacity; RICHARD RIMMER, (former) DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR), in his individual capacity; ROSEANNE CAMPBELL, (former) WARDEN OF MULE CREEK STATE PRISON, in her individual capacity; and JOHN/JANE DOES 1 THROUGH x,<br><br>　　　　　Defendants. | CASE NO. C07-01165 SBA<br><br>**REPLY BRIEF IN SUPPORT OF MOTION BY DEFENDANTS TO DISMISS FIRST AMENDED COMPLAINT [F.R.C.P. 12(b)]**<br><br>Hearing Date: October 30, 2007<br>Time: 1:00 p.m.<br>Courtroom: 3, 3rd Floor<br>Judge: Hon. Saundra Brown Armstrong<br>Address: 1301 Clay Street<br>　　　　　Oakland, CA 94612-5212<br><br>Complaint Filed: February 27, 2007 |

　　Defendants former Attorney General Bill Lockyer, former CDCR Director Richard Rimmer, and former Mule Creek State Prison Warden Roseanne Campbell hereby submit the following Reply Brief in support of their Motion to Dismiss.

///

///

///

///

///


# ARGUMENT

## I.

### PLAINTIFF FAILS TO SHOW THAT A COGNIZABLE LEGAL DUTY WAS OWED BY DEFENDANTS

In his Oppositions, plaintiff argues that defendants owed him a legal duty, and he cites to the California Constitution, article IV, sec. 13 (general duties of the state Attorney General); Cal. Government Code sections 12512 (Attorney General prosecuting or defending causes), 12524 (Attorney General authority to call conferences), and 12550 (Attorney General supervisory authority); and various portions of the California Department of Corrections Operations Manual. (Opp; 5:9 - 8:1). Plaintiff's reliance on these sources is misplaced.

As the California Supreme Court explained in *Haggis v. City of Los Angeles*, 22 Cal.4th 490 (2000), in order for a statute or enactment to impose a mandatory duty:

> the enactment [must be] *obligatory*, rather than merely discretionary or permissive ..., it must *require*, rather than just authorize or permit, that a particular action be taken or not taken. (Citations omitted.) It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion." (Emphasis in original.)

*Id.*, at 498.

Thus, an enactment can create a mandatory duty only if it requires a particular action to be taken.

Here, none of the sources cited by plaintiff obligates either the California Attorney General, CDCR Director, or CDCR Wardens to take or not take any <u>particular</u> action with respect to carrying out their official duties. Plaintiff, therefore, has failed to show the existence of any mandatory duty in this case.

## II.

### PLAINTIFF HAS NOT SHOWN ANY DUE PROCESS VIOLATION

Plaintiff's attempt to establish a Due Process Violation (Opposition 10:5 - 11:8) is without merit, as the cases cited by plaintiff are not on point.

///

*McNeil v. Director, Patuxent Institution*, 407 U.S. 245 (1972),[1] dealt with a plaintiff who was convicted of assault, sentenced to 5 years in prison, ordered by the court to undergo examination for possible psychiatric commitment, and held indeterminately because he refused to cooperate with state psychiatrists. The Supreme Court held that under Fourteenth Amendment Due Process, plaintiff could not be confined indeterminately beyond his original sentence, since there was no evidence to show that plaintiff would be more cooperative and easier to evaluate in the future. *Id.*, at 249-250.

*Haygood v. Younger*, 769 F.2d 1350, dealt with a prison inmate who suffered prolonged incarceration, because prison records officers improperly calculated his sentence.

*Fairley v. Luman* involved a prolonged detention (12 days) following an arrest, where the Ninth Circuit addressed due process concerns in cases where an individual's liberty interest was at issue "absent a criminal conviction." *Fairley, supra*, 281 F.3d at 918. Similarly, *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992), cited in *Fairley*, also dealt with a prolonged detention following an arrest, where the plaintiff was detained for 114 days before being arraigned.

None of the cases cited by plaintiff address whether or not a Due Process violation arises when a state Attorney General or state Department of Corrections Director or warden, fails to personally monitor judicial opinions that may affect other inmates in unrelated cases.

Plaintiff's case at bar does not involve a pre-conviction detention, an erroneously calculated sentence or an incarceration beyond the term of an imposed sentence. Consequently, plaintiff's authority is distinguishable, and does not support the finding of a Due Process violation here.

**III.**

**PLAINTIFF HAS FAILED TO SHOW "DELIBERATE INDIFFERENCE" BY DEFENDANTS**

Plaintiff concedes that the cases he relies upon, unlike his own case, all deal with

---

1. Of note is the fact that in *McNeil,* the trial court dismissed the California Attorney General and CDCR Director from the action, and directed a verdict in favor of the prison warden.

3

instances where the state-official defendants allegedly had actual notice of the plaintiff's particular plight, and then acted with deliberately indifference to his rights. (Opposition; 12:15-18.) Despite this critical difference, plaintiff asserts that actual knowledge of plaintiff's situation is not required if the state official "simply failed to follow policies and procedures, as happened here." (Opposition; 12:19-20.) Plaintiff's argument mixes apples with oranges and is unsupported by the law he cites.

Plaintiff's reliance on *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992), quoted in *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), is misplaced, because the discussion of "deliberate indifference" in *Oviatt* concerned the elements of municipality liability under Section 1983 for an alleged unconstitutional municipal policy, and does not address the requisite "deliberate indifference" needed to establish individual liability for a violation under the Eighth Amendment. As the Supreme Court stated in *Farmer v. Brennan*, 511 U.S. 825 (1994), "a prison official may be held liable under the Eighth Amendment ... only if he knows that inmate faces a substantial risk of serious harm and disregards that risk of harm by failing to take reasonable measures to abate it." *Id*., at 849 (Emphasis added.)

Similarly, plaintiff's reliance on *Campbell v. Illinois Dep. of Corrections*, 907 F.Supp. 1173, is also of no avail. The quotation presented in plaintiff's Opposition at 13:7-10, suggesting that "deliberate indifference" can be shown by simple "innocent error," is taken out of context and misstates the law. The court in *Campbell* was explaining that incarceration beyond a prisoner's sentence, even if it was due to "innocent error," was sufficiently serious to constitute a Constitutional deprivation. The court was not stating, as plaintiff suggests, that "innocent error" alone can constitute deliberate indifference. Thus, plaintiff's representation is not well taken. Moreover, *Campbell* specifically reiterated the rule that in order to show "deliberate indifference" the state official must be aware of the plaintiff's particular situation, holding that:

> To demonstrate deliberate indifference in the context of a claim brought by an individual who has been incarcerated beyond his legal release date: a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted.

4

*Id.*, at 1181 (citations omitted).

Because plaintiff has not alleged, and cannot allege, that defendants Lockyer, Rimmer or Campbell had any notice of plaintiff Cousins' particular situation, they could not have been deliberately indifferent to his rights.

## II.

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In *Anderson v. Creighton*, 483 U.S. 635 (1987), the United States Supreme Court set forth the analytical framework for the qualified immunity analysis, and cautioned that the inquiry should be sufficiently particular, and thus relevant to the case at hand, so that the objective reasonableness of the state official's actions can be ascertained. As the Court explained:

> whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action (citation omitted), assessed in light of the legal rules that were "clearly established" at the time it was taken, (citation omitted). The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But **if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow* (v. Fitzgerald*, 457 U.S. 800 (1982)).  Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." (Citation omitted.)

*Anderson, supra*, 483 U.S. at 639-640 (emphasis added).

Thus, a proclamation that a generalized constitutional right exists is insufficient to defeat a claim of qualified immunity.

Here, plaintiff alleges that the Fourteenth Amendment Due Process clause and the Eighth Amendment prohibition against cruel and unusual punishment provides him with a constitutional right against "illegal incarceration." (Opp.; 10:17, 16:24-26.) Stated in this generalized manner,

1 defendants agree.

2 However, if the question, in the first step of the qualified immunity analysis, is whether or not plaintiff's right to be free from illegal incarceration was violated, because the state Attorney General, CDCR Director and Mule Creek State Prison warden failed to personally monitor court decisions and then track the potential effect of those decisions on all possible inmates who may be affected in unrelated cases, then defendants respectfully submit that the answer is "no."

8 Nor, in the second step of the analysis, would it be objectively unreasonable for these state officials to understand that they had no legal obligation to personally perform such monitoring and tracking as part of their official duties.

11 Plaintiff himself recognizes "importantly," that qualified immunity is generally available to officials performing discretionary functions. (Opp.; 16:17-18.) A review of the specific "duties" listed by plaintiff, whether derived from the state constitution, by statute or by departmental manual, reveals plainly that the state Attorney General, and the CDCR Director and wardens are given substantial discretion in carrying out their official responsibilities. This is particularly evident by the fact that the "duties" identified in plaintiff's Opposition are all stated in general terms as objectives, without any particular course of action being mandated, or even recommended. Certainly, not a single "duty" identified by plaintiff requires that the defendants personally monitor and track court decisions as demanded by plaintiff in this case.

20 For these reasons, it cannot be said that the plaintiff's right to be free from illegal incarceration was violated by the facts alleged here. Nor can it be said that the contours of that right, if it was violated, made it "sufficiently clear" that a reasonable state Attorney General, CDCR Director or CDCR warden would know that not personally monitoring case law decisions, tracking all potentially affected inmates in unrelated cases, and advising sentencing courts of changes in the law would violate that right. Defendants, therefore, are entitled to qualified immunity.

27 ///

28 ///

## III.

## BILL LOCKYER, THE FORMER CALIFORNIA ATTORNEY GENERAL AND STATE'S LEAD CRIMINAL PROSECUTOR, IS SHIELDED BY ABSOLUTE PROSECUTORIAL IMMUNITY

Plaintiff goes to lengths to establish that the California Attorney General is the state's "chief law enforcement officer," with direct supervisory authority over all of California's district attorneys "in all matters" pertaining to the duties of their offices, including oversight of policies and training connected with the district attorney's preparation for and prosecution of state criminal violations. Plaintiff also alleges that in his case, he challenged his conviction by appealing to the state court of appeals - an appeal that was opposed in the appellate court on behalf of the People of the State of California by the Attorney General's Office. Plaintiff then complains in this lawsuit that former Attorney General Lockyer is liable because he failed to notify the sentencing court that the law upon which plaintiff was convicted had changed.

Although the Attorney General's "notifying the sentencing court" of a change in the law affecting plaintiff's case would necessarily involve advocacy by the Attorney General in plaintiff's criminal case, thus entitling the Attorney General to prosecutorial immunity, plaintiff attempts to avoid the application of prosecutorial immunity by employing a game of semantics. Plaintiff argues that the Attorney General would not have been an "advocate for the state" if he were to seek plaintiff's release, due to the *North* decision, but instead the Attorney General would merely have been "processi[ing] information and forward[ing] it to the sentencing court." (Opp., 21:9-11.) Plaintiff's selective word choice constitutes a fiction that presents a distinction without any difference.

As discussed in Argument III. of defendants' moving papers, the Attorney General's seeking of plaintiff's release, because of post-conviction information that casts doubt on the correctness of the conviction, would be an integral part of the prosecution process. Accordingly, defendant Lockyer is entitled to prosecutorial immunity.

///

///

///

## IV.

**THE FIFTH CAUSE OF ACTION (BANE ACT) FAILS TO STATE A CAUSE OF ACTION, BECAUSE DEFENDANTS DID NOT ACT WITH "THREATS, INTIMIDATION OR COERCION" OR ANY DISCRIMINATION**

Plaintiff's Opposition fails to address the fact that neither defendant Lockyer, Rimmer nor Campbell engaged in any "threats, intimidation or coercion" against plaintiff that violated his legal rights. Plaintiff was lawfully convicted, lawfully sentenced, and lawfully incarcerated at the times that each of those events occurred. The First Amended Complaint contains no allegations to show that the named defendants at any time acted by the specified improper means prohibited in the Bane Act (Cal. Civil Code §52.1).

As to plaintiff's Civil Code §52 claim (unlawful discrimination), plaintiff does not address the fact that he has failed to allege facts to show that defendants discriminated against him based on any specified protected classification. Thus, plaintiff fails to state a claim under this statutory provision.

## CONCLUSION

For the reasons discussed herein, and in defendants' moving papers, the First Amended Complaint fails to identify the existence of any cognizable legal duty owed under the facts of this case that would give rise to liability for money damages against defendants Bill Lockyer, Richard Rimmer, and Roseanne Campbell. Even if plaintiff alleged sufficient facts to show the existence of a constitutional duty, defendants Lockyer, Rimmer and Campbell are entitled to qualified immunity from plaintiff's §1983 claims.

Further, defendant Bill Lockyer, the former California Attorney General, is shielded from liability by absolute prosecutorial immunity, and plaintiffs Fifth Cause of Action (Civil Code §52 (Unruh Civil Rights Act) and §52.1 (Bane Act)) fails because defendants did not at anytime act against plaintiff with any "threats, intimidation or coercion" or discrimination.

///

///

///

1 | Defendants, therefore, respectfully urge the Court to grant this motion, and to dismiss plaintiff's First Amended Complaint.

Dated: October 16, 2007.

    EDMUND G. BROWN JR., Attorney General
     of the State of California
    TYLER B. PON
    Supervising Deputy Attorney General

    */s/  Wil Fong*
    _____
    WIL FONG
    Deputy Attorney General

    Attorneys for Defendants