**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

WILLIAM HENRY COUSINS,

    Plaintiff,

v.

BILL LOCKYER, (FORMER) ATTORNEY GENERAL OF CALIFORNIA *ET AL.*,

    Defendants.

No. C 07-1165 SBA

**ORDER**

[Docket No. 13]

    Before the Court is defendants' motion to dismiss [Docket No. 13] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, the defendants' motion to dismiss is hereby GRANTED.

### BACKGROUND

    The plaintiff in this case is William Henry Cousins, a former California inmate who is suing several state officials based upon his allegation that he was wrongfully incarcerated beyond the time he should have been released. The defendants are Bill Lockyer, the former state Attorney General, Richard Rimmer, the former director of the California Department of Corrections and Rehabilitation (CDCR), and Roseanne Campbell, the former warden of Mule Creek State Prison, all of whom are being sued in their individual capacity. Cousins also names various John Doe state employee defendants in his suit.

    Cousins was arrested on June 2, 1999, in San Jose, California and charged under Penal Code Section 290(g)(2) for failure to register with the police department within five days of coming into the city. *See* Docket No. 1 at 3. On October 1, 1999, the Santa Clara County District Attorney filed a two-count indictment against Cousins alleging 1) he failed to register as a sex offender with a felony conviction and 2) he failed to inform a law enforcement agency of his new address.

    On January 12, 2000, Cousins was convicted by a jury on Count two and sentence to 25

1  years to life in prison. His conviction was affirmed on appeal on November 1, 2002 and a petition
2  for rehearing by the Sixth District Court of Appeal was denied on November 25, 2002. The
3  California Supreme Court denied Cousins' petition for review on February 2, 2003. *Id.* at 4.
4        On October 8, 2003, the California Court of Appeal decided *People v. North*, 112 Cal. App.
5  4th 621 (Cal. Ct. App. 2003), in which the court declared Penal Code Section 290(f)(1)
6  unconstitutionally vague. *See* Docket No. 13 at 2. This was the same criminal statute upon which
7  Cousins had been incarcerated. The state did not seek review of the appellate court's decision. *Id.*
8        In January 2004, Cousins filed a writ of habeas corpus in the California Supreme Court and
9  argued that he was entitled to release because the statute upon which he was imprisoned had been
10  declared unconstitutional. *See* Docket No. 16 at 4. More than a year later, the state responded to
11  Cousins' petition and argued that even though Section 290(f)(1) had been declared
12  unconstitutionally vague, it was still valid in the plaintiff's case. *Id.* The California Supreme Court
13  issued an order to show cause upon the CDCR director, and the Attorney General's office
14  subsequently agreed that the petitioner's writ should issue. *Id.* at 5.
15        Cousins was released from prison on June 2, 2005, approximately one year and seven months
16  after the California appellate court ruled that Section 290(f)(1) was unconstitutionally vague. On
17  February 2, 2007, Cousins filed a complaint in federal district court, alleging that his extended
18  incarceration violated several state laws and his civil rights under 42 U.S.C. § 1983. His complaint
19  named as defendants the individuals mentioned above in addition to the state of California, the
20  California Department of Corrections and the California Department of Justice. *See* Docket No. 1.
21  Cousins amended his complaint on August 27, 2007, dropping the state entities as defendants. *See*
22  Docket No. 11.
23        Cousins' amended complaint alleges that Lockyer, Rimmer and Campbell -- in their
24  individual capacities -- breached specific duties owed to him. Cousins claims Lockyer had the duty
25  to personally "inform the trial court in Mr. Cousins' conviction and various officials in the CDCR
26  including, but not limited to, the Director of the CDCR, as well as the Warden of Mule Creek." *Id.*
27  at ¶ 15. The plaintiff further alleges that Rimmer and Campbell personally had
28

> a duty to discover when statutes in the Penal Code are invalidated . . . a duty to discover who was incarcerated under the invalid statute, as well as a duty to determine the effect on all sentences affected by the change in law [and] . . . [a]fter making such a determination, Defendants were under a duty to inform the trial court that Plaintiffs [sic] sentence was no longer authorized by law.

*Id.* at ¶ 16. Cousins avers that in breaching all of these specific duties, the defendants violated his constitutional rights to due process and to freedom from cruel and unusual punishment. Cousins also alleges state claims of negligence, negligent infliction of emotional distress, false imprisonment and violation of the Bane Act.

## **LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if it does not "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as true. *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007). However, conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Courts generally do not look outside the pleadings, including any attachments thereto, in deciding a motion to dismiss. *See United States v. LSL Biotechs.*, 379 F.3d 672, 699 (9th Cir. 2004). A document is not considered outside the complaint if it is "incorporated by reference," *i.e.*, the complaint specifically refers to the document and if its authenticity is not questioned. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997). If dismissal of the complaint is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *See Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1335 (2006); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

3

**ANALYSIS**

**A.    Defendants' Immunity Arguments[1]**

    **1.    Prosecutorial immunity for the Attorney General**

Lockyer argues that he is entitled to absolute prosecutorial immunity from both the constitutional and state claims because he was acting within the scope of his duty to pursue a criminal prosecution on behalf of the state. *See* Docket No. 13 at 7. Lockyer cites *Imbler v. Pachtman*, 424 U.S. 409 (1976) for the proposition that a prosecutor is immune from suit "in initiating a prosecution and in presenting a state's case." *Id.* at 431. In *Imbler*, the plaintiff sued members of the Los Angeles Police Department for violating his constitutional rights after his federal habeas petition was granted and he was released. In affirming the district and appellate court decision, the U.S. Supreme Court held that in the context of Section 1983 claims, a prosecuting attorney is absolutely immune from civil liability when his or her activities are "intimately associated with the judicial phase of the criminal process." *Id.* at 430.

The *Imbler* holding shields certain post-conviction choices by a prosecutor from civil liability if these choices relate to his or her duties as a criminal prosecutor. *See Id.* at 427, n. 5; *see also Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (a prosecutor's post-conviction decision to withhold exculpatory evidence is a due process violation but also "is, nonetheless, an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages"); *Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984). A prosecutor is "bound by the ethics of his office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction." *Imbler,* 424 U.S. at 427, n. 25.

In the present case, Cousins is suing Lockyer based on his failure to inform the sentencing court of the decision invalidating the statute upon which Cousins was incarcerated. *See* Docket No.

---

[1] As a preliminary matter, it is important to note that the defendants in this case are being sued in their individual capacities, and so the 11th Amendment does not bar personal liability for these state actors. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). "To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

11, ¶ 15. Since the state statute held void was a criminal statute, any duty to inform the court as to a change in law in Cousins' case was part of Lockyer's job as a criminal prosecutor. *See Broam*, 320 F.3d at 1030 (a prosecutor's duty to hand over or withhold exculpatory information while pursuing a case "cannot be construed as only administrative or investigative"). Since he was still performing his duties as a prosecuting attorney after Cousins was incarcerated, Lockyer is entitled to absolute immunity from the Section 1983 claims. Such an act or an omission to act falls within the scope of his duties in "initiating and pursuing a criminal prosecution" and to "inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction." *Imbler,* 424 U.S. at 409, 427, n. 25.

The same is true for Cousins' state claims. The California code states that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." CAL. GOV. CODE. § 821.6. As Lockyer notes, this code section is "given an 'expansive interpretation' in order to best further the rationale of the immunity, that is to allow the free exercise of the prosecutor's discretion and protect public officers from harassment in the performance of their duties." *Ingram v. Flippo*, 74 Cal. App. 4th 1280, 1292 (1999). The immunity applies to post-conviction conduct so long as there is a causal relationship between the alleged harm and the prosecution process. *Id.* at 1292-1293. As noted above, since Lockyer's alleged failure to personally examine court decisions, discover any changes in law that might affect Cousins and report them to the relevant court are acts that fall within his duties as a criminal prosecutor, Lockyer is entitled to absolute immunity from the plaintiff's state claims.

**2.   Qualified immunity for the other defendants**

"The doctrine of qualified immunity protects government officials from civil liability for damages caused by their actions." *Sepulveda v. Ramirez*, 967 F.2d 1413, 1415 (9th Cir. 1992); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The doctrine has arisen because "permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the

5

1  discharge of their duties." *Anderson*, 483 U.S. at 638.  The immunity applies to both constitutional
2  and statutory rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Haley v. Donovan*, WL
3  2827478 (9th Cir. 2007).

4      The defendants contend they are entitled to qualified immunity because the plaintiff has not
5  properly alleged the violation of any constitutional right that was clearly established law. *See*
6  Docket No. 13 at 6.  Both the defendants and plaintiff cite *Saucier v. Katz,* 533 U.S. 194 (2001) for
7  the proposition that state actors are entitled to qualified immunity unless the plaintiff can show 1)
8  that a constitutional right was violated on the facts alleged and 2) that the constitutional right
9  violated was clearly established. *Id.* at 202.  The inquiry into whether a right is clearly established
10 "must be undertaken in light of the specific context of the case." *Phillips v. Hust*, 477 F.3d 1070,
11 1079 (9th Cir. 2007) (quoting *Saucier*, 533 U.S. at 201).  The contours of the right alleged to have
12 been violated "must be sufficiently clear that a reasonable official would understand that what he is
13 doing violates that right." *Carlo v. City of Chino*, 105 F.3d 493, 500 (9th Cir. 1997) (quoting
14 *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *Groten v. California*, 251 F.3d 844, 851 (9th Cir.
15 2001).  To determine whether a constitutional right is clearly established, "in the absence of binding
16 precedent, a court should look to whatever decisional law is available to ascertain whether the law is
17 clearly established under the *Harlow* test." *Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir. 1989);
18 *Doe By and Through Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995); *see*
19 *Harlow*, 457 U.S. at 818 ("[w]e therefore hold that government officials performing discretionary
20 functions generally are shielded from liability for civil damages insofar as their conduct does not
21 violate clearly established statutory or constitutional rights of which a reasonable person would have
22 known").

23     Defendants Richard Rimmer, the former director of CDCR, and Roseanne Campbell, the
24 former warden at Mule Creek State Prison, claim they are entitled to qualified immunity because 1)
25 they owed the plaintiff no legal duty that, if breached, amounted to the violation of a constitutional
26 right, and 2) even if such a right was violated, it was not clearly established law.  Cousins claims
27 Rimmer and Campbell had
28

6

>    a duty to discover when statutes in the Penal Code are invalidated . . . a duty
>    to discover who was incarcerated under the invalid statute, as well as a duty
>    to determine the effect on all sentences affected by the change in law [and]
>    . . . [a]fter making such a determination, Defendants were under a duty
>    to inform the trial court that Plaintiffs [sic] sentence was no longer
>    authorized by law.

Docket No. 11 at ¶ 16. Cousins further contends these correctional officers were aware of their duties because they are outlined in the CDCR's "Operations Manual." *See* Docket No. 16 at 16-18. Although Cousins does not mention the operations manual in his amended complaint, he cites to certain of its provisions in his opposition papers. *Id.* Yet Cousins does not provide the Court with so much as a photocopy of this alleged manual; nor has the plaintiff requested judicial notice of the manual or properly authenticated any of its contents. Moreover, given that this Court is in an epistemic void with respect to the nature and pedigree of the alleged manual, the Court has no basis on which to accept plaintiff's argument that the document's provisions carry the weight of statutory or decisional law.[2] *See* Docket No. 16 at 17-18.

However, even if the manual's provisions were properly before the Court, Rimmer and Campbell are still entitled to qualified immunity because it is not sufficiently clear that a reasonable official, standing in the defendants' shoes, would understand he or she was violating Cousins' rights by failing to personally monitor changes in the law, determine how to apply these changes to individual prisoners and notify the relevant courts. *See Anderson*, 483 U.S. at 640. The defendants fully agree that Cousins possesses a broad constitutional right to be free from wrongful incarceration. *See* Docket No. 17 at 4-5. If the plaintiff was permitted to articulate the violation of

---

[2] Cousins cites *In re Player*, 146 Cal. App. 4th 813 (Cal. Ct. App. 2007) to support his contention that the operations manual carries the weight of law. But *Player* relies primarily upon the California Code of Regulations in granting the petitioner's habeas motion after he was denied behavioral credits by the prison. The case refers to the CDCR operations manual but sheds no light on the legal weight of its provisions. There are, in fact, a number of courts that reject the argument that an administrative provision or state department regulation are relevant to an inquiry into a constitutional violation. *See Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 929 (9th Cir. 2001) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his constitutional right. . . ."); *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986) ("[A]llegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right.").

1  this right in such a broad manner to show his right was "clearly established" in the law, then the

2  defendants would not be shielded by qualified immunity because a reasonable official, standing in

3  the defendants' shoes, would understand the right and know it was being violated if Cousins'

4  remained in prison after the invalidation of the statute upon which he was incarcerated. But as the

5  Supreme Court explains,

6  > if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of [the *Harlow* decision]. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights . . . It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized . . . sense.

11 *Anderson*, 483 U.S. at 639 (citations omitted).

12  In the present case, the defendants agree with Cousins that wrongful incarceration is a

13 constitutional violation. But in the context of a qualified immunity inquiry, "the right allegedly

14 violated must be defined at the appropriate level of specificity before a court can determine if it was

15 clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Hydrick v. Hunter*, WL 2445998

16 (9th Cir. 2007). Here, the plaintiff offers no decisional, statutory or other law to suggest that a

17 reasonable official standing in the defendants' shoes would have any way of knowing that, by failing

18 to personally check all appellate court decisions for changes in the law, failing to apply these

19 changes to individual inmates statewide and then failing to contact the appropriate courts, he or she

20 was violating Cousins' rights. These duties, while articulated in adequate detail, are not clearly

21 established in the law.

22  Cousins' reliance on *Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990) actually underscores

23 the defendants' position. In that case, the court explained that prison officials cannot "stand by idly

24 after an inmate has raised the prospect that he is being unlawfully incarcerated and has provided

25 documentary evidence in support of his claim." *Id.* at 1398. The plaintiff in *Alexander* repeatedly

26 objected -- both orally and in writing -- to his sentence recalculation and personally showed certified

27 court documents to prison officials. *Id.* at 1394. In so doing, the *Alexander* plaintiff made prison

28

8

1 | officials conscious of his plight and placed a duty upon them to refrain from acting with deliberate
2 | indifference. *See id.; see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Haygood v. Younger*,
3 | 769 F.2d 1350, 1354 (9th Cir. 1985) (to assert an Eighth Amendment violation for incarcerating
4 | someone without legal grounds, the plaintiff must show "deliberate indifference" on the part of state
5 | officials).
6 |     Cousins, on the other hand, never met with prison officials, pursued no administrative
7 | remedy nor did anything else to make officials aware that the invalid California statute upon which
8 | he was convicted might affect his sentence. Instead, Cousins appealed directly to the courts for
9 | relief, and his petition was eventually granted. *See* Docket No. 16 at 4-5.
10 |     The plaintiff's reliance on *Bradford v. State of California*, 36 Cal. App. 3d 16 (Cal. Ct. App.
11 | 1973) is likewise misplaced. In *Bradford*, state record keepers failed to make appropriate entries
12 | about the dismissal of the plaintiff's criminal charges, resulting in the plaintiff's groundless arrest.
13 | The *Bradford* court held that the plaintiff's claim was sufficient to withstand a general demurrer
14 | because entity liability was still available despite the existence or nonexistence of qualified
15 | immunity for individual officials. *Id.* In the present case, none of the defendants is an entity. Since
16 | the defendants are being sued in their individual capacities, Cousins must show -- unlike the plaintiff
17 | in *Bradford* -- that they personally knew about or participated in the alleged violation. *Howard v.*
18 | *Klicka*, WL 1725589 (9th Cir. 2007) (a supervisor may only be liable for constitutional violations if
19 | he personally "participated in, or directed the violations, or knew of the violations and failed to act
20 | to prevent them") (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)); *KRL v. Moore*, 384
21 | F.3d 1105, 1118 (9th Cir. 2004). *Bradford* explored the interaction of two state statutes regarding
22 | entity liability and individual liability; the case does not address the meaning of "clearly established"
23 | in the context of a qualified immunity inquiry.
24 |     Finally, even after reviewing the language of the operations manual as recited by the
25 | plaintiff, it is unclear how its provisions mandate the broad duties the defendants are supposedly
26 | obligated to personally perform. One guideline, for example, states that "[c]ourt decisions and court
27 | orders shall be processed in a uniform manner to ensure proper disposition." Docket No. 16 at 7.
28 |

9

Another explains that "[p]ublished Appellate Court decisions are effective the date they become final and have the same application on all similar cases and circumstances." *Id.* It is far from "clearly established" that such provisions -- even assuming they carry the force of statutory law -- impose an affirmative duty on Rimmer and Campbell to personally track all changes in the law, determine their effect on all inmates statewide and then promptly notify the proper court. It is even less clear that a reasonable official would interpret these guidelines as imposing such a broad, affirmative duty.

Rather than offer statutory or administrative law supporting his allegations that the rights he claims were violated are clearly established, the plaintiff merely offers some provisions in a manual that have been placed improperly before the Court. Similarly, the cases cited by Cousins do not show that his alleged rights -- to have the CDCR director and the prison warden check all changes in the law and apply them to individual inmates -- are clearly established in the law. For these reasons, both Rimmer and Campbell are entitled to qualified immunity as state actors.

## CONCLUSION

Accordingly, defendants' motion to dismiss [Docket No. 13] pursuant to Rule 12(b)(6) is GRANTED.

IT IS SO ORDERED.

Dated: 10/31/07

*Saundra B Armstrong*

Saundra Brown Armstrong

United States District Judge